# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LILLIE M. ROSS, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-3080 |
| | § | |
| BAYLOR COLLEGE OF MEDICINE, | § | |
|     Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

Pending before the Court in this employment-discrimination case is Defendant Baylor College of Medicine's ("Baylor's") Motion for Summary Judgment [Doc. # 23] ("Motion"). Plaintiff Lillie Ross filed a Response [Doc. # 26], and Baylor filed a Reply [Doc. # 27]. After carefully considering the parties' submissions, applicable legal authorities, and all pertinent matters of record, the Court **grants** the Motion as to Ross's claims under federal law and **dismisses without prejudice** Ross' claims under state law.

## I.    <u>FACTUAL BACKGROUND</u>

### A.    <u>Ross' Employment History at Baylor</u>

Plaintiff Lillie Ross, an African-American woman, was first hired by Baylor College of Medicine as a medical records clerk in the Department of Ophthalmology in April 1999. In June 1999, she transferred to Baylor's Women's Health Initiative,

where she worked from June 1999 to April 2002 as a clerical assistant. Ross transferred to the Department of Dermatology as a medical records clerks in April 2002, where she remained until September 2006 when she resigned and took a position with Texas Children's Hospital.[1] A short time later, in December 2006, Ross was rehired by Baylor as a medical records clerk in the Urology Department. Ross was informed in March 2008 that her employment would be terminated effective May 1, 2008. Baylor's stated reason for the termination was that it was part of a reduction in force.[2]

### B.    Ross' Alleged Injuries and Impairments

Ross alleges that she suffered a work-related injury to her hand in 2000. She filed a workers compensation claim, which was denied.[3] In May 2005, Ross injured her left shoulder while performing her filing duties in the Department of Dermatology.[4] She testified that the repetitive work of filing and overhead reaching

---

[1]    Deposition of Lillie Ross, Exh. 1-A to Motion [Doc. # 23-1] ("Ross Deposition"), at 121-22.

[2]    *Id.* at 254-255 [Doc. # 23-2]; Termination Letter, Exh. 7 to Motion [Doc. # 23-15].

[3]    *See* Email Summary of Workers' Compensation Claims, Exh. 19 to Motion [Doc. # 23-25] ("Email Summary of Workers' Comp. Claims").

[4]    *See* Ross Deposition, at 82-83.

caused the injury to her shoulder.[5] Ross filed a workers compensation claim for this injury, which was accepted.[6]  Two years later, in May 2007, Ross alleged that she reinjured her left shoulder while filing documents in the Department of Urology.[7] Consequently, Ross' doctor released her to work but restricted the lifting activities of her left arm to five pounds.[8]  This restriction was to last until May 21, 2007.[9]  On May 22, 2007, Ross' doctor restricted Ross from using her left arm entirely.[10]  Following the May 2007 incident, Ross again applied for workers compensation benefits. Though her request was initially denied, she began receiving benefits in late 2007.[11]

In addition to the foregoing work-related injuries, Ross also claims to have suffered an injury to her right hand as a result of falling at her apartment complex.[12] Following this injury, Ross took leave from work to have surgery on her right hand

---

[5]      *Id.* at 82.

[6]      Email Summary of Workers' Comp. Claims.

[7]      Ross Deposition, at 85.

[8]      May 16, 2007, TWC Status Report, Exh. 20 to Motion [Doc. # 23-26].

[9]       *Id*.

[10]      May 22, 2007, TWC Status Report, Exh. 21 to Motion [Doc. # 23-27].

[11]      Notification of First Temporary Benefit Payment, Exh. 22 to Motion [Doc. # 23-28].

[12]      Ross Deposition, at 23.

in August 2007.[13] She was cleared to return to work without restrictions on September 6, 2007.[14]   On September 12, 2007, Rose Jackson, a Senior Administrative Coordinator at Baylor, informed Ross that she was expected to perform her "normal duties" because Ross' doctor had released her to work without restrictions.[15] Approximately one week later, Ross submitted a letter from her doctor placing her on a five-pound lifting restriction for her *right* arm.[16]  Subsequently, on October 8, 2007, Ross' doctor again stated that she *could not use* her *left* arm while working.[17]  In November 2007, Ross began a workers' compensation leave of absence associated with her alleged shoulder injury that was to last through May 6, 2008.[18] Ross received the letter advising her of her termination on May 1, 2008.  Ross stated in her deposition that she has not yet received a release to return to work from any physician.[19]

---

[13]     *Id.* at 211.

[14]     September 6, 2007, Doctor's Note, Exh. 23 to Motion [Doc. # 23-29].

[15]     Email from Rose Jackson to Lillie Ross, Exh. 24 to Motion [Doc. # 23-30].

[16]     September 20, 2007, Doctor's Note, Exh. 25 to Motion [Doc. # 23-31].

[17]     October 8, 2007, TWC Work Status Report, Exh. 26 to Motion [Doc. # 23-32].

[18]     Employer Response to Notice of Application for UI Benefits [Doc. # 62-2].

[19]     Ross Deposition, at 331-32, 334.

### C.    **Ross' Interactions with Bradley Stees**

During her time in the Department of Urology, Ross' supervisor was Bradley Stees, the Department Administrator.  Ross was also supervised by Rose Jackson during this time.  On September 11, 2007, Stees called a meeting of the medical records staff.  Ross testified that, at this meeting, in the presence of her co-workers, Stees told Ross that she "was failing to pull [her] weight and [she] needed to consider taking another job."[20]  Ross concedes that as a result of her missing work due to her hand surgery, she was behind on her work at that time.[21]

Subsequently on October 23, 2007, Ross contacted the IT department to report a problem with her computer speakers.[22]  Stees then confronted Ross regarding the time she spent on the phone resolving this issue.[23]  The confrontation was in the presence of several of Ross' co-workers.[24]  Ross claims that Stees screamed and yelled at her while pacing excitedly.[25]  Ross responded to Stees angrily throughout the

---

[20]     *Id.* at 213.

[21]     *Id.* at 216-17.

[22]     *Id.* at 227.

[23]     *Id.*

[24]     *Id.* at 231.

[25]     *Id.* at 230-32.

exchange.[26]  Ross contends that Stees again told her that she needed to pull her weight
or find another job.[27]  Ross also claims that Stees told her that if she did not have her
"papers filed by the end of the week, he was going to write [her] up."[28]  Stees also
stated that if "anyone [else] did not have the papers filed that they would also be
written up."[29]  Ross testified that she was "fearful" of Stees during the incident, that
she "did not know if he was going to hit [her] or what he was going to do,"[30] and that
it left her feeling "humiliated."[31]

Ross reported the October 23 incident to Sandy Dunn in Baylor's employee
relations department on October 26, 2010.[32]  Ross also complained of the September
11 incident and of a previous instance in which Stees called her and another African-
American employee into his office and accused them of taking unscheduled time off

---

[26]    *Id.* at 234.

[27]    *Id.*; Statement of Lillie Ross to Baylor's Employee Relations Department, Exh. 32 to
         Motion [Doc. # 23-38] ("Ross' ER Complaint"), at 2.

[28]    Ross' ER Complaint, at 2.

[29]    *Id.*

[30]    Ross Deposition, at 279; Ross' ER Complaint, at 1.

[31]    Ross Deposition, at 232.

[32]    *See* Ross' ER Complaint.

"in retaliation" against their co-workers who had previously taken time off.[33]  Ross noted to Dunn that she was the only African-American employee on the medical records staff and that, other than one other staffer, she (Ross) was the only staffer in the department who did not have family connections to supervisors and other employees.[34]  Dunn undertook an internal investigation in response to Ross' complaints.  The investigation found that Stees' behavior was "unprofessional," but not based on illegal discrimination.[35]  The investigation additionally concluded that "familial relationships" between a director and one of Ross' colleagues had led Ross to conclude that her colleague received preferential treatment.[36]  Baylor also found that Ross exhibited "ongoing performance problems."[37]  As a result of the investigation, Baylor instructed Stees not to speak to Ross again, and there was no further interaction between them.[38]

---

[33]     *Id.*; *see also* Ross Deposition, at 164-65.

[34]     Ross Deposition, at 177; Investigation Report, Exh. 33 to Motion [Doc. # 23-39] ("Investigation Report").

[35]     Investigation Report, at 3

[36]     *Id.*

[37]     *Id.*

[38]     *See* Ross' Supplement to E.E.O.C. Charge, Exh. 2 to Motion [Doc. # 23], at 3; Ross Deposition, at 244.

### D.      Procedural Background

Following the termination of her employment, Ross filed the instant lawsuit raising claims under both federal and Texas law.  Specifically, Ross raises claims of race discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981"). Ross also asserts claims of disability discrimination and failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 1212 *et seq.* ("ADA"), and claims of entitlement or interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*  Additionally, Ross brings claims of workers' compensation retaliation, Tex. Lab. Code. § 451.001, intentional infliction of emotional distress, invasion of privacy, and slander under Texas law.  Baylor moves for summary judgment on all claims.

## II.      SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v.*

*ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would

prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." (citation omitted)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary

judgment, that evidence is not properly before the district court."  *Malacara v.*

*Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the

district court a duty to sift through the record in search of evidence to support a party's

opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.  <u>ANALYSIS</u>

### A.  <u>Federal Claims</u>

#### 1.  **Claims under the Americans with Disabilities Act**

Ross raises claims under the Americans with Disabilities Act for both disability

discrimination and failure to accommodate.  Baylor moves for summary judgment on

both claims.

***Disability Discrimination.***—Because Ross has not presented any direct

evidence that Baylor discriminated against her on the basis of a disability, the Court

applies the burden-shifting framework established for Title VII actions under

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Taylor v.*

*Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir. 1996) (citing *Daigle v. Liberty*

*Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).  Under *McDonnell Douglas*,

> The plaintiff must . . . demonstrate a prima facie case of discrimination;
> the defendant then must articulate a legitimate, non-discriminatory
> reason for its decision to terminate the plaintiff; and, if the defendant
> meets its burden of production, the plaintiff must then offer sufficient
> evidence to create a genuine issue of material fact either (1) that the
> defendant's reason is not true, but is instead a pretext for discrimination

> . . .; or (2) that the defendant's reason, while true, is only one of the
> reasons for its conduct, and another motivating factor is the plaintiff's
> protected characteristic. . . .

*Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004) (internal quotations and citations omitted); *see also Dortch v. Memorial Herman Healthcare Sys.-Southwest*, 525 F.Supp.2d 849, 870 (S.D. Tex. 2007). To make out a prima facie case of disability discrimination, a plaintiff must establish four elements: "(1) He is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003) (citing *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279-80 (5th Cir. 2000)). It is not disputed that Ross' employment

was terminated, and that this satisfies the adverse-employment-action requirement.[39]

Baylor argues that Ross is not disabled within the meaning of the ADA.  A "disability" is defined in the Act as follows:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such impairment; or
>
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(2); *Ivy v. Jones*, 192 F.3d 514, 516 (5th Cir. 1999).

Merely having an impairment, however, does not make one "disabled" for purposes of the ADA.  *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193-95

---

[39]   Plaintiff's Second Amended Complaint is less than clear in identifying the adverse employment action for which she seeks recovery under her disability discrimination claim.  *See* Second Amended Complaint [Doc. # 12] ("Complaint").  The Complaint contains the allegation that Ross was "discriminated against on the basis of her disability and required to perform heavy work without regard to her restriction."  *Id.*, ¶ 26.  Ross also alleges that she "was further penalized, harassed, and treated in a discriminatory manner as a result of attempting to exercise her protected rights of a person with a disability."  *Id.*  These are not allegations of ultimate employment decisions, which are required to satisfy the adverse-employment-decision requirement in the Fifth Circuit.  *See, e.g.*, *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007).  Nevertheless, construing Ross' Complaint most leniently, and considering that there is no dispute that Ross was terminated, the Court construes Ross to assert a claim challenging termination of her employment as the operative adverse employment action for her disability discrimination claim.

(2002).[40]  Claimants also need to demonstrate that the impairment limits a major life activity.  *Id.*  Noting that the ADA defines neither "substantially limits" nor "major life activities,"  the Fifth Circuit has relied on the regulations promulgated by the EEOC under the ADA to provide guidance.  *Dupre v. Charter Behavioral Health Sys. Of Lafayette, Inc.*, 242 F.3d 610, 614 (5th Cir. 2001); *Gonzales v. City of New Braunfels*, 176 F.3d 834, 836 (5th Cir. 1999).  EEOC regulations define "major life activities" to include functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(I); *Aldrup v. Caldera*, 274 F.3d 282, 286-87 (5th Cir. 2001).  When the major life activity at issue is working, the plaintiff must be limited in his ability to work at a broad class of jobs, not just a single, particular job.  *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999).

Ross argues that the injury to her left arm is a disability under the ADA.  In support she notes that she has been placed on work restrictions relating to the use of that arm, and had workers compensation claims accepted in both 2005 and 2007.  She also notes that she has been approved for long term disability benefits.  Baylor

---

[40]     This case has been abrogated in part by recent amendments to the ADA.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). However, these amendments did not take effect until January 1, 2009, do not apply retroactively, and thus are irrelevant to this case.  *See E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (2009).

counters that Ross is relying on working as the "major life activity" that is "substantially limited" by her arm impairment, but she has failed to show, or even argue, that she is limited in her ability to work a broad class of jobs.  *See Murphy*, 527 U.S. at 523.  Baylor also argues that Ross is not "substantially limited" in performing the duties of her former job because she continued to work for six months after reinjuring her shoulder in 2007.  Further, she is seeking reinstatement to her former position in this case.

Although it is far from clear that Ross is "disabled," or "regarded as disabled," under the ADA**,** the Court assumes, for purposes of this motion, that Ross has satisfied the "disability" requirement of the *prima facie* test.  Ross' disability discrimination claim nevertheless fails, however, because she has not established either that she is qualified for the position at issue or that she was replaced or treated less favorably than non-disabled employees—the second and fourth elements of the *prima facie* test, respectively.

"The ADA defines a 'qualified individual with a disability' as 'an individual who, with or without accommodation, can perform the essential functions of the employment position that such individual holds or desires.'"  *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (citing 42 U.S.C. § 12111(8)).  Ross was employed at Baylor as a medical records clerk.  Her position required filing

papers including, according to her testimony, repeated "overhead reaching." The undisputed record shows that on October 8, 2007, Ross was restricted by her physician from any use of her left arm. In November 2007, Ross went on a workers' compensation leave that was to last until May, 2008.[41] Ross testified that she has not yet received a release from her physician to return to work. Ross has not identified any accommodation that would allow her to perform the duties of a medical records clerk. Ross, accordingly has not raised a genuine issue of material fact that she was qualified for the position of medical records clerk at the time she was terminated.

Even if Ross has established that she was qualified for the position of medical records clerk at Baylor, she nevertheless fails to make out a *prima facie* case of disability discrimination because she has failed to raise a genuine issue of material fact that Baylor replaced her with or treated her less favorably than non-disabled employees. *See Gowesky*, 321 F.3d at 511. Ross fails to allege, must less adduce evidence, that Baylor replaced her with a non-disabled employee or otherwise treated non-disabled employees more favorably.

Because Ross has not raised a genuine issue of material fact that either she was qualified for her position or that Baylor replaced her with or treated her less favorably than non-disabled employees, she has failed to make out a *prima facie* case of

---

[41]        She received notice of her termination during this leave.

disability discrimination, and Baylor is entitled to summary judgment on this claim. *See Rachid,* 376 F.3d at 312.

     ***Failure to Accommodate*.—**Baylor is also entitled to summary judgment on Ross' failure to accommodate claim under the ADA.  Under the ADA, an employer "discriminates" against an employee if it fails to "make[] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee."  42 U.S.C. § 12112(b)(5)(A).  An ADA plaintiff in a failure to accommodate claim must qualify as an individual with a disability, *see Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir. 2001), and must also "show that the employer knew of such employee's substantial physical or mental limitation." *Taylor v. Principal Fin. Group*, 93 F.3d 155, 164 (5th Cir. 1996); *see also Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) ("Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom.") (internal citations omitted)).

     "In general, it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed.  Once such a request has been made, the appropriate reasonable accommodation is best determined through a flexible,

interactive process that involves both the employer and the qualified individual with a disability." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 112 (5th Cir. 2005) (internal citation and quotation marks omitted) (citing 29 C.F.R. § 1630.9). "Thus, it is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one." *Taylor*, 93 F.3d at 165.  "If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one." *Id.*

The only evidence proffered by Ross to support her claim that Baylor denied her a reasonable accommodation is an email exchange between two Baylor employees discussing Ross' alleged impairment.  On October 9, 2007, Paula Hebert sent an email to James Kelaher stating that she was "referring Rose Jackson, and her employee, Lillie Ross, to you."[42]  Hebert wrote that "Lillie is asking for some accommodations that will be difficult for Urology to fulfill, so I advised Rose to have the employee go in for a fitness for duty evaluation and to send you Lillie's job description."[43]  Kelaher responded that he would "like to review the documentation first—including job description, proposed accommodations, basis for those proposed restrictions, FMLA

---

[42]     Email from Paula Hebert to James Kelaher, Exh. 6 to Response [Doc. # 26-7].

[43]     *Id.*

certifications, doctor's letters (if any) and other info that you believe is relevant."[44]
Kelaher added that "[i]deally, the accommodation process would have occurred much
earlier on.  If it is evident that a restriction is going to be permanent, then
accommodation should be pursued rather than burning FMLA.  Nonetheless, this is
outside of your control and is not always known."[45]  From this email, Ross argues that
Baylor ignored her requests for reasonable accommodations.

The Court is not persuaded.  Neither the cited email exchange, nor any other
evidence of record, raises a genuine issue of material fact that Baylor ever denied Ross
a reasonable accommodation.  Nor does the evidence constitute any proof of when she
actually requested any such accommodations or what accommodations she requested.
The undisputed evidence of record establishes that after Ross injured her hand in
2000, Baylor reassessed her work area and made recommendations as to the structure
of the area.[46]  Following her shoulder injury in 2005, and without a request from Ross,
Baylor provided her a step stool to make filing easier.[47]  Ross never requested a step
stool while in the Department of Urology, though there was one available to her, and

---

[44]     Email from James Kelaher to Paula Hebert, Exh. 6 to Response.

[45]     *Id.*

[46]     Ross Deposition, at 80.

[47]     *Id.* at 84.

she used it.[48]   Further, Baylor granted Ross numerous requests for leave during her

employment such as allowing her to leave work early to attend physical therapy

sessions.[49]   For example, from March 21, 2007 to November 5, 2007, thirteen leave

requests were approved.[50]   In fact, Baylor asserts, and Ross does not deny, that Baylor

granted every single medically related leave request Ross submitted.[51]   Significantly,

Ross also fails to identify any accommodation that was available and reasonable under

the circumstances.[52]   Baylor is entitled to summary judgment on Ross' failure to

accommodate claim.[53]

---

[48]     *Id.* at 85-86; 240.

[49]     *Id.* at 217-18.

[50]     Approved Employee Requests for Time Off, Exh. 3 to Motion [Doc. # 23-11].

[51]     Motion, at 38.

[52]     The closest that Ross comes to identifying an accommodation is the unsupported
         assertion in her Response that "[v]arious other positions have become open at Baylor
         since [P]laintiff's termination for which she is a qualified individual." Response, at
         11.  The unsubstantiated, conclusory allegation that Baylor could have reassigned
         Ross to other open positions, which became available after her termination, and for
         which she is qualified, is insufficient to raise a genuine issue of material fact that
         Baylor denied Ross a reasonable accommodation.  *See Gonzales v. City of New
         Braunfels*, 176 F.3d 834, 838-39 (5th Cir. 1999) (liability will not be imposed on
         employer for failure to accommodate by reassignment unless the plaintiff satisfies his
         burden of proving he is qualified, with out without accommodation, for the new
         position).

[53]     Ross' Complaint also makes a single reference to the Rehabilitation Act of 1973, 29
         U.S.C. 794.  *See* Complaint, ¶ 5.  However, Ross does not appear to assert a claim
         under the Rehabilitation Act.  Further, she pleads no facts to expressly support this
         claim, and makes no reference to a Rehabilitation Act claim in her Response.  In any
                                                                                 (continued...)

## 2.   **Family and Medical Leave Act Claims**

Ross raises claims under the FMLA for interference and retaliation.  Baylor moves for summary judgment on both claims.  Ross did not respond to Baylor's Motion for Summary Judgment on these claims.  These claims therefore are deemed abandoned.[54]  Nevertheless, in an exercise of caution, the Court provides the following analysis.

*FMLA Entitlement or Interference.*— "Under the FMLA, an eligible employee is entitled to take up to 12 work weeks of leave in a 12-month period when, *e.g.*, the employee has a serious health condition that makes her unable to perform the duties of her position."  *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (citing 29 U.S.C. § 2612(a)(1)(D)).  To establish a claim for FMLA interference

---

[53]   (...continued)
event, to the extent that Ross does assert a Rehabilitation Act claim (and it is applicable), it is governed by the same legal standards as her ADA claim, and is therefore subject to summary judgment for the same reasons.  *See Kemp v. Holder*, --- F.3d ---, 2010 WL 2510133, at *2 (5th Cir. Jun. 22, 2010).

[54]   The Court of Appeals makes it clear that when a party does not address the issue in his brief to the district court, that failure constitutes a waiver on appeal.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson*, 230 F.3d 733, 747 n.16 (5th Cir.2000), cert. denied, 532 U.S. 915 (2001); *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir.1999)).  By analogy, failure to brief an argument in the district court waives that argument in that court.  *Cf. Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001) ("We have held that a party 'in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue.'") (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir.1983)).

or entitlement, Ross must show that she was an eligible employee, Baylor interfered, restrained or denied her exercise of FMLA rights, and she was prejudiced by the violation of those rights. *See Mahoney v. Ernst & Young LLP*, 487 F.Supp.2d 780, 799 (S.D. Tex. 2006). The only factual allegation regarding Ross' FMLA claims in her Second Amended Complaint ("Complaint") is that her employment was terminated during her leave.[55] "After a qualifying absence [under the FMLA], the employer must restore the employee to the same position previously held by the employee before taking leave under the FMLA or a comparable position, with equivalent pay, benefits, and working conditions." *Haley*, 391 F.3d at 649 (citing 29 U.S.C. § 2614(a)(1)).

Ross has failed to produce any evidence to raise a genuine issue of material fact as to any of the elements of an FMLA entitlement or interference claim. Moreover, Ross has not made the requisite showing that she was prejudiced by any alleged denial of her FMLA rights. *See Ragsdale v. Wolverine World Wide*, *Inc.*, 535 U.S. 81, 89 (2002); *Mahoney*, 487 F.Supp.2d at 799. As noted, the undisputed evidence of record is that Ross has not been released to return to work by any doctor. Accordingly, she has failed to show that she was prejudiced by any violation of her right to reinstatement at the expiration of her FMLA leave. *See also* 29 C.F.R. § 825.216(c)

---

[55]     *See* Complaint, ¶¶ 28-29.

("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA."); *Mahoney*, 487 F.Supp.2d at 806; *Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir. 2005) (employer was not obligated to reinstate employee when employee conceded that he could not have returned to work until after the expiration of his FMLA leave).  Baylor is entitled to summary judgment on Ross' FMLA entitlement or interference claim.

> **FMLA Retaliation.**—Because Ross has not produced any direct evidence of retaliation, her FMLA retaliation claim is governed by the *McDonnell Douglas* burden-shifting framework.  *See Mauder v. Metropolitan Transit Authority of Harris County, Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).  To establish a *prima facie* case of retaliation, she must demonstrate that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA.  *Id.* (citing *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 768 (5th Cir. 2001)).  Ross has failed to meet her initial burden to produce evidence to establish the *prima facie* case, because she has

not shown *inter alia* she can satisfy the third element of the test.  Baylor is therefore

entitled to summary judgment on Ross' FMLA retaliation claim.

### 3.   Race Discrimination

Ross raises claims of disparate treatment and hostile work environment based

on race under Title VII and § 1981.[56]  Baylor moves for summary judgment on all of

these claims.[57]

***Disparate Treatment.***—Baylor next moves for summary judgment on Ross'

disparate treatment claims based on her race.  Because Ross has presented no direct

evidence of disparate treatment, the Court analyzes Ross' disparate treatment claims

under the *McDonnell Douglas* burden-shifting framework.  As noted above, to

establish a *prima facie* case of race discrimination, a plaintiff must demonstrate that

---

[56]   The summary judgment test for assessing discrimination claims under § 1981 is the same as it is under Title VII.  *See David v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *Pratt v. City of Houston*, 247 F.3d 601, 605 n.1 (5th Cir. 2001).

[57]   Plaintiff Ross also makes a passing reference to a disparate impact claim in her Complaint: "The unlawful employment practices of Defendant, Baylor College of Medicine, had a disparate and adverse impact on Plaintiff because of her race.  Such employment practices were not job-related and were not consistent with business necessity.  These practices were also in violation of known policies that were in place at the time."  Complaint, ¶ 20.  Ross has pleaded no facts in her Complaint in support of a disparate impact claim and makes no reference to such a claim in her Response.  Further, she made no reference to a disparate impact claim in her administrative filings, and any such claim is therefore unexhausted.  To the extent Ross intends to assert a claim for disparate impact discrimination, it fails for these reasons and is dismissed.

he or she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was replaced by or treated less favorably than similarly situated persons who were not members of the protected class. *McDonnell Douglas*, 411 U.S. at 802; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).  It is undisputed that Ross, an African-American, is a member of a protected class and that the termination of her employment was an adverse employment action.[58]  Thus, only the second element, whether Ross was qualified for the position, and the fourth element, whether Ross was replaced by or treated less favorably than similarly situated persons who are not members of her protected class, are at issue.

---

[58]     It is, again, not clear what adverse employment action Ross asserts under her disparate treatment claim.  In her Complaint, she alleges that she was denied equipment to perform her job, given "false and unfavorable reports," denied "numerous promotions and transfers," and terminated. *See* Complaint, ¶¶ 8, 10, 15, 18.  She also pleaded that Baylor "discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's race. . . ." *Id.*, ¶ 18.  Ross has not produced any evidence to support any of the alleged adverse employment actions other than her discharge, several of which are not cognizable as ultimate employment actions in the first place. *See McCoy,* 492 F.3d at 559-60.  To the extent that Ross asserts disparate treatment claims based on adverse employment actions other than her termination, such claims are dismissed.

Ross has failed to raise a genuine issue of material fact that she was qualified for her position, medical records clerk, at the time of her termination.  As noted above, Ross had not been released by any doctor to return to work and resume filing activities.  She was therefore not qualified for the position of medical records clerk. *See Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (Title VII plaintiff was not qualified for the position when she was physically unable to perform the required duties); *see also Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998) (plaintiff not qualified for position under the ADA when he could not work the required schedule).

Ross has also failed to raise a genuine issue of material fact that she was treated less favorably than employees outside her protected class.  To satisfy the "similarly situated" requirement, the situations of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical."  *Perez v. Tex. Dept. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004).  To satisfy his burden, a plaintiff, in a termination case, must demonstrate "'that the misconduct for which she was discharged was nearly identical to that engaged in by a employee [outside the protected class] whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).  In addition, other employees' acts of misconduct must be of

"comparable seriousness" to that of the plaintiff. *Warfield v. Lebanon Corr. Inst.,* 181 F.3d 723, 730 (6th Cir. 1999); *Crosby v. Dallas Co.*, 166 F.Supp.2d 525, 530 (N.D. Tex. 2001).  Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[]." *Perez*, 395 F.3d at 209; *see, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207-08 (5th Cir. 2007); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). The "similarly situated" inquiry looks to the totality of the circumstances in determining whether an employee is an appropriate "comparator." *See, e.g.*, *Wyvill*, 212 F.3d at 305 (declining to find "similarly situated" employees who, *inter alia*, had different job duties and different supervisors); *see also Little*, 924 F.2d at 97.

Ross fails to argue or provide evidence that she was replaced by or treated less favorably than an employee outside of her protected class, and does not identify any potential comparator employee.  Accordingly, Ross has failed to raise a genuine issue of material fact on the similarly-situated prong of disparate treatment discrimination.

Because Ross has failed to establish a *prima facie* case of disparate treatment race discrimination, Baylor is entitled to summary judgment on this claim.[59] *See, e.g.*, *Okoye*, 245 F.3d at 512-13.

***Hostile Work Environment Claim.***—Baylor next moves for summary judgment on Ross' racially hostile work environment claim.  To prevail on her hostile work environment claim, Ross must prove that (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; and (4) the harassment complained of affected a term, condition, or privilege of employment.  *See Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 328 (5th Cir. May 13, 2008). "We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Baker,* 278 F. App'x at 328 (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007)) (ellipsis in *Baker*).  A plaintiff "must subjectively perceive the

---

[59]     It does not appear that Ross raises a gender discrimination claim in her Complaint. To the extent she intends to do so, such claim is subject to summary judgment in Baylor's favor for the same reasons as Ross' race-based discrimination claim.  Ross has failed to make the requisite showing both that she was qualified for her position and that she was replaced or treated less favorably than a similarly situated male employee.

harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Id.* at 328-29 (quoting *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)).   "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted); *Ramsey*, 286 F.3d at 268.

It appears that Plaintiff's hostile work environment claim is grounded on her confrontations with Stees, her allegations that Baylor denied her accommodations, and her discharge.[60]   Initially, the Court notes that Ross has failed to raise a genuine issue of material fact that Baylor denied her any requested reasonable accommodations. Further, Ross' termination is not an example of actionable harassment, which harassment requires "racially discriminatory, intimidation, ridicule, and insults." *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)); *see also Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (holding that a hostile work environment claim was untimely because, though the plaintiff was terminated during

---

[60]      *See* Response, at 6-7.

the statutory filing period, the "termination related to disparate treatment not harassing conduct"); *cf. Buchanan v. Exxon Mobil Corp.*, 2006 WL 492605, at *4 (S.D. Tex. Mar. 1, 2006) (holding that a demotion and alleged disparities in pay are "more appropriately characterized as ultimate employment decisions and discrete acts, and as such are more suited for a traditional discrimination or disparate treatment claim" than a hostile work environment claim). In any event, as noted above, Ross has failed to raise a genuine issue of material fact that her discharge was due to her race.

Turning to the allegations regarding Stees, Plaintiff identified evidence that Stees confronted her about failing to "pull her weight" on two occasions. Ross testified, and the Baylor internal investigation confirms, that on the latter occasion, Stees yelled at Ross, while pacing excitedly, in front of her co-workers. Ross stated that she felt "fearful" and "humiliated." However, Ross has failed to cite any proof whatsoever that Stees' conduct, even if sufficiently harassing,[61] was based on race.[62] Because Ross has failed to raise a genuine issue of material fact that the allegedly

---

[61]   It is far from clear that the two incidents involving Stees that Ross relies upon evince harassing conduct that was so "severe or pervasive" that it altered "the conditions of [Ross'] employment and create[d] an abusive working environment." *See Harris*, 510 U.S. at 21.

[62]   In fact, Ross fails even to cite to any evidence that she subjectively believes that Stees' conduct was based on race, which evidence, in any event, would be insufficient. *See Frank*, 347 F.3d at 138 (hostile work environment plaintiff's subjective belief that discriminatory conduct is severe or pervasive must be objectively reasonable).

harassing conduct of which she complains was in any way related to her race, Baylor is entitled to summary judgment on Ross' hostile work environment claim.  *See Ramsey*, 286 F.3d at 268.

### 4.     Retaliatory Discharge

Baylor next moves for summary judgment on Ross' retaliatory discharge claims under Title VII and the ADA on the ground that Ross failed to administratively exhaust either claim.  Ross failed to respond to this aspect of Baylor's Motion for Summary Judgment, and thus does not controvert Baylor's exhaustion contention. These claims are deemed abandoned.[63]  In addition, the Court agrees that Plaintiff failed to exhaust both claims.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court.  Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir. 1996)); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII retaliation claim must be exhausted); *Dao*, 96 F.3d at 788-89 (administrative prerequisites to filing suit under Title VII, including administrative exhaustion, also apply to ADA claims), *accord*

---

[63]     *See supra* note 54.

*Williams v. AT&T Inc.*, 356 F. App'x 761, 766 (5th Cir. 2009) (ADA retaliation claim must be exhausted).

In Ross' administrative filings, she did not check the "Retaliation" box on her Charge of Discrimination, and, more significantly, she made no allegations that could reasonably be expected to trigger administrative investigations into retaliation under Title VII or the ADA as opposed to disparate treatment discrimination.  *See Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006).[64]  Baylor is therefore entitled to summary judgment on Ross' retaliation claims under Title VII and the ADA.

## B.   State Claims

Ross also brings claims for workers' compensation retaliation, slander, intentional infliction of emotional distress, and invasion of privacy under Texas law. Baylor moves for summary judgment on all these claims.

Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.  *See Priester v. Lowndes County,* 354 F.3d 414, 425 (5th Cir.2004); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999).  These matters are more properly addressed by Texas state courts.  *See*

---

[64]    Moreover, even if Ross had properly exhausted her retaliation claims, she fails to establish a prima facie case of discrimination under either theory.  Baylor is therefore entitled to summary judgment on Ross' retaliation claims under Title VII and the ADA even if they are properly exhausted.  *See Turner*, 476 F.3d at 348; *Seaman*, 179 F.3d at 301.

*Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1575 (1999) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

Having granted summary judgment on all of Ross' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.[65] Ross' state law claims are **dismissed without prejudice** to refiling in state court.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, it is

**ORDERED** that Baylor's Motion for Summary Judgment [Doc. # 23] it is

---

[65]   The possibility that the applicable statute of limitations may have run for some or all of Ross' state claims does not affect the Court's decision to decline to exercise of supplemental jurisdiction.  Texas has a savings statute.  TEX. CIV. PRAC. & REM. CODE § 16.064.  Under that provision, "[t]he period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if" the first action was dismissed for lack of jurisdiction, *and* "not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction." *Id.*; *Vale v. Ryan*, 809 S.W.2d 324, 326-27 (Tex.App.—Austin 1991, no writ).  "A federal court's refusal to exercise jurisdiction over a pendent state claim is tantamount to a dismissal for lack of jurisdiction" for purposes of the savings statute.  *Vale*, 809 S.W.2d at 326-27; *see also Wilson v. First Gibraltar Bank, F S B, Arlington, Texas*, 1994 WL 199108, at *6 (5th Cir. May 12, 1994); *Nettles v. Aranda*, 2009 WL 2599638, at *4 (S.D. Tex. Aug. 5, 2009); *Kaplan v. Clear Lake City Water Auth.*, 1992 WL 383881, *5 (Tex.App.—Houston [14th Dist], writ denied).

**granted** as to Ross' claims under the ADA, Title VII, § 1981 and the FMLA.  It is further

      **ORDERED** that Ross's claims for workers' compensation retaliation, slander, intentional infliction of emotional distress and invasion of privacy under Texas law are **DISMISSED WITHOUT PREJUDICE**.

      The Court will issue a separate final judgment.

      SIGNED at Houston, Texas, this 7th day of **July, 2010**.

                        Nancy F. Atlas
                United States District Judge